I believe we're ready for our first case, which is Keefe v. Commissioner of Internal Revenue. Good morning, Your Honors, may it please the Court, I am Joseph Lipari, Counsel for Appellant David and Candace Keefe. The sole issue in this case is whether the approximately $2 million Mr. and Mrs. Keefe lost on the sale of property called Rentham House was an ordinary loss as they contend or a capital loss as the Commissioner of the Internal Revenue Service contends and was found by the United States Tax Court. In many ways this is not a complicated case, the facts are relatively short, I think approximately ten pages of the opinion are devoted to the facts, none of the facts are disputed by the taxpayer. The amount of the loss is not in dispute, this was not a tax shelter, the taxpayers actually lost $2 million draining their savings and putting them in debt. The general legal principles in this case are also fairly not complicated, the tax court relied under the Golsan Rule on a number of cases decided by the Second Circuit. So how did the tax court err in applying Second Circuit law, so how did the tax court make a decision? The error in the tax court's decision in our view is very simple. In determining that the taxpayers did not engage in regular substantial and continuous activity, the tax court disregarded all of the activity that the taxpayers spent in the six years before the completion of construction of the building. Sotomayor, was much of that activity consistent with renovating a property for sale? Renovating property for sale? To the extent that it's consistent with renovating property for sale. It could have been, but I would say renovating property for sale is also a trade of business. It didn't happen to be the trade of business they intended, although, frankly, in most cases in real estate, people have Plan A and Plan B. What I'm saying is to the extent to which the activities to which you're referring pertain to either selling or renting, that they don't help you. No, I think they do. I think in both cases they are regular substantial continuous activity. With either. I think you have to, you know, granted they talked about rent, they tried to get a – they didn't pan out, but over the period of time in question, there was at least equal activity on the sale front. Again, as I said, it's certainly not uncommon in the real estate area for developers of property to have alternative ways of monetizing their development. Are you arguing that somehow they were in the trade or business of renting properties generally? No. No. Well, although, as I said, there's clearly some thinking that one can't be in a trade of business until somebody's already been in a trade of business. I'd like to remind this Court that in Grotzinger, the Supreme Court case that held a professional gambler was in a trade of business. He was in a trade of business the first day he started gambling. He lost his job in February, I think, I forgot if it was 1994. Once he lost his job, he started going to the racetrack every day, and his trade or business of gambling started the first day. How's that analogous to this case? Because they never rented the property. Again, what I'm saying is the development of the property is part of the business. You can't rent property that's uninhabitable. Your argument is that they don't have to actually rent. I mean, if we took it in a different hypothetical, it would be somebody purchases an apartment building and spends several years renovating the apartments to put it on the market. It's clear in that case that the person is engaged in the trade or business of rental. But even if market conditions change and the apartment building never ends up having a lease. It's certainly not uncommon in developing an apartment building. You may decide, I'm going to sell the apartment as condominiums, I'm going to rent it as rental, or I'm going to sell it to somebody else. You determine how you're going to exit the investment, the business, when you, depending on market conditions at that time. I'm not saying you can't engage in investment activity in real estate. I could go to one of the condominium developments in this area, buy a condominium apartment thinking that it's underpriced, and I'm thinking that if I hold the apartment for a few years, I could sell it at a profit. That is not a business. But what is the, in this case, it doesn't seem to me if we're looking for, if my analogy is they purchased an apartment building and spent six years renovating individual apartments while at the same time investigating the market. And we don't seem to have the same sort of regular substantial continuous activity under this. This renovation, again, they bought this property for approximately $1 million. They spent $4 million renovating it over a six year period in addition to $3 million of interest. This was for Mrs. Keefe, who, Dr. Keefe was a full time physician. Mrs. Keefe was devoting her attention to this project on a daily basis, weekly basis, even after the family moved to Florida. She was regularly coming up to Rhode Island to supervise the activity. This was very active on her part. Those are obviously important activities, but they're equally consistent with flipping the property. Again, I'm not disagreeing with that statement, but engaging in substantial, again, the statutory provisions don't talk about a rental trade or business, they talk about a trade or business. No, so- Spending some- Are you saying that if there had been no activities towards rental at all, that if they just flipped the property, that would qualify? If they went into this transaction intending to sell it and spend six years renovating the building with the intention of selling it, that is a trade or business. It happens not to be the trade or business they thought they were entering into, but it would have been a trade or business. People, again, people build properties for sale all the time. There's a whole home building business. That is a business. It doesn't matter whether they sell it or rent it. They're also engaged in a business. We've never said in our case law address the whether, it doesn't seem to be that the parties are in dispute on this point, but whether you have to actually enter the rental rent. We've never said that in the- Again, the reason that comes up a lot in the case law is that virtually all of the case law that held against taxpayers involved taxpayers that did no activity whatsoever other than trying to find tenants in a building they bought, a building they inherited, a building they were gifted. There were no other activities other than activities attempting to rent the property. If they didn't have enough activity in renting the property, they had nothing else to rely on. If there's nothing else, I'll wait for my rebuttal. Good morning. Cheryl Wong for the commissioner. Dr. and Mrs. Keefe's rental-related activity here was not regular, continuous, and substantial. Now, why this focus on rental-related activity? Because that was how they were going to bring in the money, the essence of a business. And it's well and good and necessary to spend a lot of time and money as we don't dispute that. You would agree, though, that if a person had bought a couple of houses, renovated them, and sold them in the past, and then was doing that here on these facts, was aiming towards something like that, that could be trade or business. Yes, it could be, but that was not the argument that was made to the tax court. And there's a whole factual record that we haven't developed in the trial court under another subsection of 1221, which is A1. And that would fit really under more real property as inventory held for sale in an ordinary course of business to customers. But here, we are in A2, a rental trade or business. Well, the subsection does say trade or business, but the theory they picked was a rental trade or business, and that's what the testimony was given, that we had always intended to rent this. And to have to... Is there an issue here in that the tax court opinion says that they didn't intend to live in the property, so weren't they either intending to rent it or to sell it? Well, the testimony was that they had always intended to rent it. Right. So, but then, even if they were to make... If they had made this argument in the tax court, they would make it reviewable here, which we'll argue that it's not. Then they would have had to develop facts under some overlapping factors, some different factors as to the volume of sales, as to their expertise and history, and, you know, that kind of thing that was not touched upon at all in a trial record. So if they intended to rent at some point or sell, but not stay in the property, isn't that in the nature of a trade or business? They would have had to have done more, much more, in our view, rental-related activities, such as marketing, such as taking more steps toward securing a lease with this tenant. If things weren't working out, did they change their agent? And we have here taxpayers... I agree that the trial seemed to be focused on, and the tax court's opinion seemed to be focused on, and I may have misread that opinion to some extent, because, plainly, if you are trying to rent, but you can't, and then you have to sell because one of your creditors is after you and it's going to be impossible to keep the property, and you have to sell it at a loss, why is that treated as a capital asset, necessarily? Well, I think it would be useful to focus on the specific facts and the timeline of this case. First, the taxpayers bought this property in 2000, January of 2000. They didn't start construction until November of 2002, so that's almost three years. And I think the testimony was, during those three years, they were interviewing contractors and such, but still, that took three years. That's a third of the time when they held the property. And then they ran into some problems, unexpected problems, understandable. But then, by April of 2007, they got the first temporary certificate of occupancy. So, by whatever standards that... By whatever standards the city of Newport had, it was safe and habitable for a year, at least several months, before they actually rented it out. So, by February of 2008, they got this tenant. And until he pulled out three months later, in May of 2008, they never secured the lease. Now, the property was not, I guess, ready by the standards of Mrs. Keefe and the agent, perhaps, but maybe they could have secured a tenant who was willing to sign a lease, provided that the property was ready by the time it was going to be rented. They never got a security deposit. And it was the testimony of the agent that people do sometimes put down a deposit. And there is a lot financially riding on this transaction. So, it's the idea that even if they never intended to live in the property, which means that they must have intended either to sell or rent at some point, correct me if I'm missing something there, you also have to show, it doesn't matter, you can't do it with intent alone. You have to show enough activity, either directed towards sale, or activity either directed toward rent. Well, yes, because the way to get inside somebody's head, somebody's intent, is by what you do, as, of course, by what they say. And I guess so, the reason I'm asking is, and correct me if I'm misunderstanding, but the tax court did say they didn't, didn't the tax court make a factual finding that they did not intend to live in the building? Is that at any point? They never intended to live at the building? Is that how you would read the opinion, or you would read it more narrowly? That's the factual finding of the tax court, and we don't dispute that. Why couldn't you have a piece of property like this and keep your options open as to whether I'm going to sell it to make money or whether I'm going to rent it to make money? Well, if you're keeping your options open, and you want to say that you're in a trade or business, well... You're in the trade or business of making money off property that you buy at a reasonable, which you think is a very favorable price, and you're not, you know, and you want to make money on it either way, but you're keeping your powder dry. You don't know yet. Well, I think... You're not going to live in it. You're not going to live in it. Well, if you were going to argue a sale theory, right, then you... Okay, it is possible to have a sale business if you have just one, but it's much harder, right? And here, we would argue that there are no facts, very paltry facts, showing that they're in a sale business. If you look up 1221A1 cases where people are, you know, dealers in real property, they have a history. They have an office. They have billboards on the road. Here, we don't have... Maybe it's the first one. Well, if we had a factual record, maybe this would have been viable, but I don't think we do here. And really, with the same property or properties, you usually have to pick one, right? There's a case called Little that we cited of the Ninth Circuit where the person was obviously a dealer in property. He sold 300 properties in five years, so there's no question about that. But while he was holding them out for sale, he was renting them to tenants and he would terminate the lease with 30 days notice when he was ready to sell them. And somehow, you know, it was advantageous to him in that case to argue that he was in a rental business. Well, and the Ninth Circuit said, well, you weren't doing this volume of sales on one hand and you were just offsetting your costs. So no, you're not in the rental business. Right, but if they're final... It finally ended up that they sold it, but they could have gone either way with it. In fact, they had an incentive to go either way under the... I think under the federal tax credit provision to rent, they had an incentive to rent there. They didn't rent it because the renovation took quite a while and then the financial collapse came along and they were distressed in a distressed situation as far as their loans were concerned, so they sold it. But I don't... I'm wondering now why... I had sort of read this case differently as if the rental... The fact that they were trying to rent this case, rent, that had to be the course in order to have it be in a trader business. But you've stated and your adversaries stated that you could also be selling. Yeah, we would argue that you would have to show regular continuous substantial sale-related activity, something to bring in the money. What is your profit motive? You've got to start somewhere. If they're not going to live in it, they want to make money. That's one way or another. They want to make money. And this was activities over, what, six years, I think. It's pretty long. Regular continuous substantial renovation activity we have. Yes, so the idea is you can't... There was no argument below that they intended to sell the property. There was an argument that they engaged in continuous substantial regular activity to rent and the factual determination just was, well, you didn't intend to live in it, but you didn't engage in enough activity to say that there was a continuous substantial activity directed at rental. That's essentially what the tax court said. Right, right. So can I just... Is there an inconsistency with the tax court saying they didn't intend to live in it and then saying at the same time that they also didn't engage in continuous substantial regular activity to rent? No, I don't think so because... So you don't intend to live in it. You don't have regular continuous substantial rental related activity. I think the point though is that anyone who spends any time on anything, right, would think it would be nice if I could make money from it. But it would be nice to make money is not the same as I am in it to make this money and I'm going to do everything that I can. And I think the tax court's finding in our position is that there are things that the taxpayers could have done, especially after the tenant pulled out in May, in the beginning of the summer season. And if at that point the argument is, well, we were so desperate, we couldn't carry this property anymore. Well, the testimony is not quite clear on the timing of when things got very desperate, but I think you can find some clues in the MLS listing that's in the record. That's around... I couldn't carry the property, but maybe there's also a possibility they could have sold earlier. You know, they could have maybe entered into a contract at that point, I suppose. But in any event, if we were to write an opinion saying that because they didn't do enough to rent the property, it's therefore necessarily a capital asset, wouldn't that be flying in the face of the possibility that a sale was always an option? And if they sold for... They could have been in the business for... They could have been trying to sell it as well. But I mean, we can't say that holding property like this, if you don't intend to live in it necessarily, is excluded from being considered in a trade or business because it might be sold as opposed to rented. You still would have to have enough sale-related activity. I think in this case, most of activity went into the renovation part of it. And there was... Oh, well. Into the what? Into the renovation part of it. As to the sale, yeah, there's evidence that Mrs. Keefe went to these three auctioneers and she finally did, but there's no history, there's no history of profit. There has to be a business. So you could buy a piece of land and say, oh, I enjoy having this land. And you could do things to it. If you don't have regular continuous business activity, it's not a trade or business. Right. And the factual finding here was just there wasn't enough activity. Right, and you can lose on both counts. There was a lot of activity. There was a lot of renovation. There was a lot of renovation activity, but what is the profit-making activity that would generate money, that would show that that is your primary purpose? What are they doing if it wasn't going to make money? I mean, they got hit by the market, but apart from that, you don't sink money into something that's always gonna be a loser. Well, I'm sure they didn't go into this project thinking that it was gonna be a loser, but what their activities show is that they're thinking, well, it would be great to fix this up and it would be nice if we can make money out of this, which is anytime you buy appreciable property.  That would be putting a little starkly, I think, but the way we would put it is it doesn't add up to a trade or business in either a sale or a rental business. So in sum, we would ask the court to affirm. Thank you. Just a couple of short points. As I said, they went into this thinking they were going to rent it. That was their plan. Sorry, they were planning to rent it. That was how they envisioned it. They miscalculated a lot of things about the project. They miscalculated the cost. They miscalculated the amount of time it took. You know, businesses fail for all kinds of reasons. A bad idea, bad execution, bad timing. They probably had all three of those in this case, particularly bad timing being completed in 2008. But your adversary referred to a period of time that elapsed before they did anything. Well, again, this was... To some extent, I have to speculate here. I wasn't representing them at the time. I wasn't really familiar with it at the time. This was a historic property. This was a property that had to be restored in accordance with the historic nature of the property, the requirements of the Rhode Island Historical Society. You don't just start constructing there. You need detailed architectural plans. You need to get plans approved by the Historical Society. It's not something that you can begin construction on immediately. But as I said, the notion that if your business fails before it starts generating revenue, that would be dramatically different from what the law is in all areas. I didn't take your adversary or the tax court as saying that, that you have to... Well, they seem to be saying that the renovation was not part of the rental business. I don't know how you rent a house that's uninhabitable. In order to rent the building, you had to finish the construction. Your point is that whatever they were doing, they shouldn't be penalized because they were inept. Again, loss provisions usually come up in connection with businesses that are unsuccessful. They're sometimes unsuccessful... If this had been done successfully, they'd gotten the right contractor in, he was on time, they were able to get their applications in, they were able to do everything that was necessary in order to get the property ready, and they'd gotten the property ready in three years instead of six, then they would have either sold or... And then they would have been happy? The IRS would have been happy? They would have been happy. They would have made money. I don't know what the tax consequences would have been, but in any event, you're saying that basically it doesn't... The fact that they were engaged in trying to make money and were unsuccessful should not be in effect the cause of their... Again, as I said before, the law distinguishes between investment activities and business activities, and one can make a bad investment, one can buy property thinking it's going to be appreciated in value, and it depreciates in value, but they didn't simply buy property here. They spent six years, $4 million of construction costs, $3 million of interest rehabilitating and renovating a property, as you said, to make money. They were unsuccessful, but they were engaged in regular, substantially continuous activities. Thank you. Thank you both. We'll take the matter under advisement.